# EXHIBIT A

**Dated**                                                                          **2019**

## ISLAMIC RELIEF WORLDWIDE

### AND

## ISLAMIC RELIEF- IR USA

---

## MEMBERS' AGREEMENT

---

DocuSign Envelope ID: 4A33A8B8-9E44-4508-AF7E-E7382AE5C05F

## CONTENTS

**Clause**

1.   Definitions ........................................................................................................ 2
2.   Conditions precedent ....................................................................................... 5
3.   Purpose/General Principles .............................................................................. 5
4.   IRW Structure ................................................................................................... 6
5.   Obligations of IRW and IR USA ....................................................................... 7
6.   Duration and Termination ................................................................................. 8
7.   Confidentiality ................................................................................................ 10
8.   Dispute Resolution ......................................................................................... 10
9.   Entire agreement ............................................................................................ 11
10.  Severance Waiver .......................................................................................... 12
11.  Assignment .................................................................................................... 12
12.  Survival .......................................................................................................... 12
13.  Amendments .................................................................................................. 12
14.  Counterparts .................................................................................................. 12
15.  Third Party Rights .......................................................................................... 12
16.  Notices ........................................................................................................... 12

**Schedule 1- the Objects** ..................................................................................... 15
**Schedule 2- Summary of roles and responsibilities** ........................................ 16

DocuSign Envelope ID: 4A33A8B8-9E44-4508-AF7E-E7382AE5C05F

In the name of Allah, the Most Gracious, the Most Merciful

This agreement (the "**Agreement**") is made on the        day of November 2019.

**PARTIES:**

(1)    **Islamic Relief Worldwide**, a charitable company limited by guarantee and not having a share capital, incorporated under the laws of England and Wales under Company Number: 2365572 and registered under Charity Number 328158 whose registered office is 19 Rea Street South, Digbeth, Birmingham, B5 6LB (hereinafter referred to as "**IRW**"); and

(2)    **Islamic Relief- IR USA** a non-profit public benefit corporation organized under the laws of California and granted tax exempt status under Section 501(c)(3) of the United States Internal Revenue Code with its headquarters located at 3655 Wheeler Avenue, Alexandria, Virginia **"IR USA"),**

(each a "**Party**" and together the "**Parties**").

**WHEREAS:**

(A)    IRW began its charitable operations in 1984 and has since grown into an international humanitarian organisation addressing the needs of the poor worldwide.

(B)    IR USA began its charitable operations in the USA at the initiative of IRW for the purpose of to alleviate human suffering and provide humanitarian aid to people in need in conjunction with IRW.

(C)    IRW and IR USA have conducted their Charitable Activities on a collaborative basis in the past pursuant to the joint vision shared by the Parties to alleviate the poverty and suffering of the world's poorest people, regardless of race, gender or religious background.

(D)    IRW and IR USA desire to continue carrying out their collaborative Charitable Activities on an international basis in a spirit of co-operation and harmony, pursuant to the terms of this Agreement.

(E)    It is the intention of the Parties to work together based on the general understanding that joint collaboration between them represents an optimal employment of their resources and skills to undertake their respective Charitable Activities and that such cooperation furthers the aims of each Party.

(F)    IRW and IR USA wish to record their mutually agreed understanding of the objective of their relationship and the manner in which they will work together.

**IT IS HEREBY AGREED:**

1.    **Definitions**

The definitions in this clause apply to defined terms used in this Agreement.

Definitions:

DocuSign Envelope ID: 4A33A8B8-9E44-4508-AF7E-E7382AE5C05F

| | |
|---|---|
| **"Agreement"** | means this Member's Agreement executed between IRW and IR USA; |
| **"Applicable Laws"** | means all laws, rules, regulations, and other legal requirements or obligations that apply to IRW or IR USA, as applicable; |
| **"Articles"** | means the Articles of association of IRW; |
| **"Board of Trustees"** | has the meaning given to that term in the Rules; |
| **"Charitable Activities"** | means, in relation to each of IRW and IR USA, the activities carried out by them in fulfilment of its Objects; |
| **"Confidential Information"** | has the meaning given to it in clause 7.1; |
| **"Executive Team"** | has the meaning given to that term in the Rules; |
| **"Financial Standards"** | are the following standards which IR USA must meet:- |

i.  a majority of IR USA's total annual income is spent on programmes (domestic and international), the choice of programme is at the discretion of IR USA;

ii.  programmes carried out within the Territory can utilise up to 30% of IR USA's unrestricted income only;

iii.  all fixed assets of IR USA are registered in the name of a centrally owned Waqf entity where possible, subject to compliance with the laws which apply in the Territory;

iv.  donors' consent is sought by IR USA to allow their data to be shared with IRW where appropriate, and local data protection laws which apply in the Territory are complied with when collecting such data; and

v.  all accounts of IR USA are to be audited yearly by a professional and recognised independent body registered in the Territory.

| | |
|---|---|
| **"International General Assembly"** | means membership (both voting and Non-Voting Members and who may be collectively referred to as the International General Assembly in the Rules; |

Page | 3

DocuSign Envelope ID: 4A53A6B8-9E44-4566-AF7E-E7562AE5C06F

| | |
|---|---|
| **"IR Family Council"** or **"IRFC"** | means the body mainly composed of the Chief Executive officers of each National Entity Member; |
| **"Islamic Relief"** or **"IR"** | is the term used to describe the global family of collaborating relief organisations which share a common vision, mission, and family identity, and all of which use the term "Islamic Relief" as part of their organisational name, as well as the Logo. Generically Islamic Relief can also be any member of the Islamic Relief worldwide family of charities who share this common relief mission; |
| **"License Agreement"** | means the License Agreement entered into by the Parties on the 10th May 2010; |
| **"Logo"** | the following logo:- |



| | |
|---|---|
| **"Member"** | means a charity law member of IRW appointed in accordance with the Rules. For the avoidance of doubt, Non Voting Members do not fall within the definition of "Member"; |
| **"Membership Accreditation Committee"** | The Membership Accreditation Committee, which will be established by the International General Assembly and defined in the Rules, shall evaluate and recommend for approval membership of the International General Assembly, the board of trustees of IRW, to resolve disputes on issues relating to continuing membership of the International General Assembly and to review and advise IR USA in relation to the appointments to their Board of Trustees; |
| **"Mission"** | Is a statement describing how a Party is going to achieve the vision'; |
| **"National Entity Member"** | means a corporate entity admitted as a Member in accordance with the Rules and "National Entity Members" shall be construed accordingly; |
| **"Objects"** | are the legal purposes of the IRW and IR USA, as set out in Schedule 1; |
| **"Parties"** | means IRW and IR USA and **"Party"** shall be construed accordingly; |

| **"Rules"** | means the Rules of IRW, as amended from time to time; |
|---|---|
| **"Trademarks"** | is as defined in the License Agreement but not limited to the Logo and word marks including 'Islamic Relief', 'Islamic Relief USA', 'IR', 'IRW' and all translations whether registered or not with the exception of the translation of the word mark 'ISLAMIC RELIEF' into the French language'; |
| **"Trustee Member"** | has the meaning given to that term in the Rules; |
| **"Territory"** | means United States of America; |
| **"Waqf"** | means an endowment to a religious, educational, or charitable cause; and |
| **"Vision"** | is, in relation to each Party, a statement which conveys and sets out what that Party aims to achieve through its work. |

## 2.    Conditions precedent

2.1    This Agreement shall only come into effect upon the satisfaction of the following conditions precedent, as determined by IRW in its sole discretion:

2.1.1    the approval, adoption and successful filing with the Companies House and the Charity Commission of England & Wales by IRW of new Articles which are intended to give effect to this Agreement; and

2.1.2    the approval and adoption by IRW of the Rules which are intended to give effect to this Agreement and the Articles.

## 3.    Purpose/General Principles

3.1    The Parties agree to ensure that they adopt a Vision, Mission and objects that are broadly similar to each other's.

3.2    IRW agrees to set a global strategy for Islamic Relief in collaboration and consultation with IR USA and all the other Members of IRW. IR USA, in its sole discretion, agrees to adopt and implement the principles of that strategy to the extent permitted by their fiduciary duties and by Applicable Laws and the capacity and strategic objectives of IR USA. IRW may review and revise its global strategy from time to time in consultation with IR USA and all the other Members of IRW.

3.3    Both Parties agree that IR USA will have representation at IRW in accordance with and pursuant to the terms of this Agreement, the Articles and the Rules.

3.4    IRW and IR USA agree that they are each committed to the principle that IR will have one presence/operation only in any national jurisdiction. All decisions by IR USA relating to it establishing a presence or activities in any other national jurisdiction apart from the Territory shall be subject to prior written approval of IRW.

3.5    IRW and IR USA agree that IR USA is responsible for its operations within its own jurisdiction and that IR USA is and shall remain a wholly independent and autonomous entity. Furthermore, nothing in this Agreement shall fetter the right of IR

DocuSign Envelope ID: 4A33A8B8-9E44-4508-AF7E-E7382AE5C05F

USA to have full direction, control and oversight of its funds either in the Territory or in any other national jurisdiction.

Both Parties agree that IR USA programmes which are not carried out in the Territory are to be delivered through IRW or another intermediary, which IR USA has appropriately vetted, and has determined in the sole discretion of IR USA to be in the best interests of the Islamic Relief Family. If IR USA chooses to deliver any of its programmes which are not carried out in the Territory through an intermediary other than IRW, the Parties agree the following procedure will be followed:

3.5.1    IR USA shall provide IRW with thirty (30) days' notice in writing of its intention to do so;

3.5.2    If IRW has any objections to IR USA's choice of intermediary, IRW will notify IR USA in writing of its objections within thirty (30) days from the date it receives notice from IR USA;

3.5.3    IR USA, without in any way limiting or fettering its discretion to choose appropriate intermediaries, shall review these objections and take them into consideration in determining whether to continue using its chosen intermediary to carry out its programmes outside of the Territory;

3.5.4    If IR USA still wishes to use the intermediary then any disputes between IR USA and IRW shall be resolved in accordance with the dispute resolution procedure outlined in section 8 of this Agreement.

3.6    Both Parties agree that they will remain separate and distinct entities with independent boards of directors that will remain ultimately responsible for the management and governance of their respective organisations.  Notwithstanding anything in this Agreement, to the extent that this Agreement, any other agreement between the parties, or any policy adopted by IRW or IR USA conflicts or is otherwise not in conformity with the Applicable laws, as may be amended from time to time, the Applicable laws shall prevail and the Parties will be responsible for agreeing to alternative provisions of this Agreement or any other agreement between the Parties or any policy adopted by the Parties which are not in conformity with Applicable Laws.

3.7    Nothing in this Agreement shall be construed to constitute a partnership, joint venture, agency, employment, mandate, representation or delegation between the Parties and neither Party shall become bound by any representation, act or omission of the other not expressly provided for in this Agreement, and both Parties undertake to each other that they shall use their reasonable endeavours to ensure that their respective employees, representatives, delegates, agents, consultants and subcontractors shall not represent the relationship between the Parties as such.

## 4.    IRW Structure

4.1    IRW shall establish and maintain:

1. An International General Assembly;

2. A Board of Trustees;

3. An Executive Team; and

4. An IR Family Council.

DocuSign Envelope ID: 4A33A8B8-9E44-4508-AF7E-E7382AE5C05F

4.2 The composition and proceedings of the International General Assembly, Board of Trustees, Executive Team and IR Family Council are set out in the Rules. A summary of those provisions is found in Schedule 2 of this Agreement (attached).

## 5. Obligations of IRW and IR USA

5.1 The Parties acknowledge that IRW and IR USA are separate legal entities but both IRW and IR USA will have obligations to each other under this Agreement which they will use their best endeavours to honour to the extent permitted by their Fiduciary duties and Applicable Laws.

5.2 IRW Obligations:

5.2.1 IRW will work to fulfil its Objects with and assist IR USA towards fulfilling IR USA's Objects as stated in the IR USA governing documents in accordance with the Vision and Mission;

5.2.2 IRW shall establish, coordinate, monitor, recommend and provide technical assistance to achieve compliance with international standards (including the Financial Standards) that may apply to all entities using the IR brand, for the purpose of ensuring consistency throughout Islamic Relief operations worldwide in a manner consistent with Applicable Laws;

5.2.3 IRW will register, own and protect usage of the Trademarks and will continue to license those Trademarks to IR USA under the Licence and IRW will monitor the worldwide operations of the Islamic Relief family of organisations in relation to use of the Trademarks under the terms of the licences granted by IRW permitting such use and this Agreement;

5.2.4 IRW will provide guidance, support and services on operational and compliance matters to IR USA through materials developed by IRW as well as through expertise and the specialist knowledge of IRW; and

5.2.5 IRW shall be responsible for coordinating the representation of IR globally at international conferences and forums.

5.3 IR USA Obligations:

5.3.1 IR USA shall collaborate with IRW and the other entities in the IR family to fulfil their respective objects as stated within their governance documents to the extent permitted by their fiduciary duties and by Applicable Laws;

5.3.2 IR USA shall use best endeavours to comply with the Financial Standards to the reasonable satisfaction of IRW, and only to the extent that such Financial Standards comply with Applicable Laws;

5.3.3 IR USA shall use best endeavours to implement and comply (and shall use best endeavours to ensure that its employees, representatives, delegates, agents, consultants and subcontractors also comply) with global policies and standards of IRW that are approved by the IRW Board of Trustees for application to all entities in the IR family only to the extent permitted by the IR USA Board's fiduciary duties and by Applicable Laws;

5.3.4 As specified in the Licence Agreement, IR USA acknowledges the exclusive right, title, interest and goodwill of IRW in the Trademarks and further

DocuSign Envelope ID: 4A33A8B8-9E44-4508-AF7E-E7382AE5C05F

acknowledges that any and all goodwill in the Trademarks arising from IR USA's use of the Trademarks is to the benefit of IRW;

5.3.5   IR USA agrees that, subject to Applicable Laws, the objects of IR USA, as defined in its constitution, will be consistent with the Objects and values of IRW;

5.3.6   IR USA will ensure that its representatives at the International General Assembly fulfil the qualification requirements as set out in the Articles and Rules;

5.3.7   The board of trustees of IR USA shall nominate its representative to the International General Assembly.

## 6.    Duration and Termination

6.1   This Agreement shall commence on the date set out in clause 2 (*Conditions precedent*) and shall continue until terminated in accordance with this clause or continue until the date that is five (5) years after the date set out in out clause 2 (*Conditions precedent*) of this Agreement ("Termination Date") whereupon it shall automatically continue for a further five year term ("Renewal Term") on the same terms unless either party gives to the other on or before the fourth anniversary of this Agreement notice to review the Agreement ("Review Notice") in which case the Parties shall enter into good faith negotiations to review and amend the Agreement and thereafter sign the amended Agreement at which point this Agreement will terminate and the amended Agreement will become effective from the date of termination of this Agreement. The same provisions shall apply to termination and renewal at the end of any Renewal Term.

6.2   This Agreement shall terminate automatically on IR USA ceasing to be a National Entity Member under the Rules.

6.3   Without affecting any other right or remedy available to it, IRW may terminate this Agreement if the circumstances set out in this clause 6.3 arise and if any such change in circumstance in this clause 6.3 is not rescinded or remedied within 60 (sixty) days of receipt of notice from IRW. Termination will occur on the expiry of 30 days' written notice to IR USA following an adverse decision taken by the Membership Accreditation Committee to revoke IR USA's membership as a National Entity Member or, if the Membership Accreditation Committee's decision is appealed by IR-USA, a decision of the International General Assembly confirming the decision to revoke IR-USA's membership:

6.3.1   IR USA makes any material change in its governing documents without prior written approval from IRW or acts outside of its stated objects, Vision, Mission and strategy;

6.3.2   IR USA permits the distribution of any surplus funds for any purpose other than in furtherance of IR USA stated objectives';

6.3.3   IR USA repeatedly breaches any of the terms of this Agreement in such a manner that, in IRW's reasonable opinion, IR USA is unable to comply with or perform its obligations under this Agreement;

6.3.4   IR USA breaches a material term of this Agreement;

DocuSign Envelope ID: 4A33A8B8-9E44-4508-AF7E-E7382AE5C05F

6.3.5   IR USA suspends, or threatens to suspend, payment of its debts or is unable to pay its debts as they fall due or admits an inability to pay its debts or (being a company or limited liability partnership) is deemed unable to pay its debts; or

6.3.6   an application is made to the court, or an order is made, for the appointment of an administrator, or if a notice of intention to appoint an administrator is given, or if an administrator is appointed over IR USA;

6.4     This Agreement may, at IRW's discretion, be suspended by IRW immediately on the giving of written notice to IR USA in accordance with the Rules and the rights of IR USA as a National Entity Member during such period of suspension shall be as determined by the Rules if:-

6.4.1   IR USA is dissolved or deregistered by any applicable regulator or government registrar or is unable to operate within the boundaries of this Agreement and the applicable appeal period within the relevant jurisdiction and/or the completion or denial of any appeal that IR USA may have undertaken in that regard has expired; or

6.4.2   any event occurs, or proceeding is taken, with respect to IR USA in any jurisdiction to which it is subject that has an effect equivalent or similar to any of the events mentioned in this clause 6.4.

6.5     This Agreement may, at either party's discretion, be suspended immediately on the giving of written notice in accordance with the Rules and the rights of the other party during such period of suspension shall be as determined by the Rules if in the reasonable opinion of the party suspending membership, the other party presents an immediate threat to the reputation, integrity or operation of Islamic Relief in accordance with guidelines ratified by the International General Assembly no later than at the second meeting of the International General Assembly.

6.6     On termination of this Agreement:

6.6.1   all IR USA's rights under this Agreement will cease immediately and all obligations of IRW under this Agreement will, with the exception of clause 7 (*Confidentiality*) and clause 8 (*Dispute Resolution*) and 15 (*Notices*) cease immediately;

6.6.2   Subject to Applicable laws, IR USA's property and assets either held by IR USA or by another party on behalf of IR USA shall be transferred as soon as reasonably possible to another charity registered in the Territory or to a charity that may receive the property and assets in each case in accordance with Applicable Laws and that has similar charitable purposes to IR USA and which has entered into a membership agreement with IRW and, as directed by IRW, both Parties shall use reasonable endeavours to give effect to this clause;

6.6.3   the Licence shall terminate with immediate effect;

6.6.4   IR USA must promptly return all of IRW's materials to IRW;

6.6.5   the Parties shall issue a joint press release by IR USA and IRW, indicating the end of this Agreement and a mutual accounting of all monies due by the Parties to each other;

DocuSign Envelope ID: 4A33A8B8-9E44-4508-AF7E-E7382AE5C05F

6.6.6    IR USA shall promptly cease conducting itself in any manner which might suggest that IR USA is or continues to be in any way part of, affiliated with, endorsed by or otherwise connected in any manner with the IR family;

6.6.7    IR USA shall change its name to exclude use of the Trademark, or any part of it, in the IR USA name as specified in the license; and

6.6.8    IR USA shall promptly transfer to IRW all domain names which contain the Trademark, or any part of it.

## 7.    Confidentiality

7.1    Each of the Parties shall keep confidential, and not disclose or permit to be disclosed to any third party, all confidential information regarding the business and affairs of the other Party, including but not limited to financial, commercial, legal and technical information of the other Party, to the extent such information is non-public and reasonably held by that other Party as private and confidential ("**Confidential Information**"), except as necessary to perform its obligations under this Agreement or as set out in clause 7.2.

7.2    A Party may disclose Confidential Information:

7.2.1    to its employees, sub-contractors and agents provided that such disclosure is necessary for the purposes of performing its obligations under this Agreement or its Objects and the disclosing Party undertakes reasonable efforts to ensure that any such employees, sub-contractors or agents keep the information confidential in accordance with this Agreement;

7.2.2    where such information is, or becomes, publicly available on a non-confidential basis through no fault of the disclosing Party; or

7.2.3    in order to comply with any Applicable laws or by order of a court of competent jurisdiction but with reasonable prior notice to be given to the other Party insofar as is reasonably possible.

7.3    Upon expiry or termination of this Agreement, for whatever reason, each Party shall deliver to the other Party any information that should reasonably be considered of a confidential nature and belonging to the other Party and copies thereof in the first mentioned Party's possession, power, custody or control at that time.

7.4    The obligations set out in this clause shall survive termination and or expiry of this Agreement, with no time limit.

## 8.    Dispute Resolution

8.1    Any dispute or difference between the Parties arising out of or related to this Agreement shall first be referred to the Chief Executive Officer of IRW and the Chief Executive Officer of IR USA. If such persons cannot resolve the dispute or difference within thirty (30) business days of such referral being made, then either Party may refer the matter to the Board of Trustees of IRW and the board of trustees (or equivalent) of IR USA, respectively, for resolution. The Board of Trustees of IRW and IR USA shall each designate one of its trustees (or equivalent) to serve as the liaison with the other Party's board of trustees (or equivalent), to attempt to mediate the dispute or difference.

DocuSign Envelope ID: 4A33A8B8-9E44-4508-AF7E-E7382AE5C05F

8.2 In the event that a dispute or difference between the Parties arising out of or related to this Agreement is not resolved between the Parties in accordance with the procedures in clause 8.1 within 30 business days of the matter being referred to their respective boards of trustees (or equivalent), then without prejudice to or in any other way derogating from the rights of the Parties as set out in this Agreement, and as an alternative to such Party instituting a law suit or legal action in any jurisdiction, the following process shall be followed:

8.2.1 the International General Assembly shall, upon request from either Party, appoint a panel of three mediators whereby each Party appoints one mediator each and the International General Assembly appoints the third mediator. The mediator appointed by the International General Assembly shall be independent of both Party, and not be affiliated in any personal and/or professional capacity with either Party whatsoever. The three mediators will then meet with the Parties in an attempt to mediate a resolution between the Parties. The number of mediators may be changed upon written agreement of the Parties;

8.2.2 if the dispute or difference is not resolved within 60 days of the first meeting of the mediators, or either Party fails to participate or to continue to participate in the mediation, or the mediation terminates before the expiration of the said period of 60 days without any resolution of the dispute or difference, it shall be determined by arbitration administered by the International Centre for Dispute Resolution in accordance with its International Arbitration Rules. The International Expedited Procedures of the International Centre for Dispute Resolution shall apply regardless of the amount in dispute. The place of arbitration shall be Birmingham, England. The language of the arbitration shall be English. Except as may be required by law, neither a Party nor its representatives may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of both Parties Every decision at arbitration shall be binding on the parties. By submitting the dispute to arbitration, the parties undertake to carry out any decision without delay and shall be deemed to have waived their right to any form of recourse insofar as such waiver can validly be made.

8.3 All costs of the mediation and arbitration shall be borne equally by the Parties.

8.4 This Agreement shall be governed by the domestic law of the seat of arbitration, without application of its conflict of laws provisions.

## 9. Entire agreement

9.1 This Agreement, including the referenced Articles and the Rules and all other constitutional documents which the Parties may agree with each other constitute the final written expression of the terms of agreement between the Parties relating to the subject matter contained herein and is the complete and truthful statement of those terms. Except as to the separate License Agreement and any contractual agreements regulating the movement of funds between IRW and IR USA, which stand on their own terms, this Agreement supersedes all other prior agreements between the Parties with respect to such subject matter. Neither Party shall be bound by any definition, condition, representation, warranty, covenant, term or other provision except as is expressly stated herein or as is set forth in writing and executed by the duly authorised officers of both Parties.

DocuSign Envelope ID: 4A33A8B8-9E44-4508-AF7E-E7382AE5C05F

## 10.    Severance Waiver

10.1    In the event that any provision of this Agreement are found not to comply or are inconsistent with Applicable Laws of IR USA, then IR USA shall give notice to IRW and IRW and IR USA shall agree in writing to terms which are compliant with the Applicable Laws of IR USA and such agreed terms shall replace the inconsistent and/or non-compliant provision.

10.2    In the event that any provision of this Agreement is rendered void, avoidable, unenforceable or otherwise ineffective by operation of law, such avoidance, avoidability, unenforceability or ineffectiveness shall not affect the enforceability of the remaining provisions of this Agreement.

10.3    No delay or omission by any Party to this Agreement in exercising any right, power or remedy provided by law or under this Agreement shall affect that right, power or remedy or operate as a waiver of it. The rights, powers and remedies provided for in this Agreement are cumulative and not exclusive of any rights, powers and remedies provided by law.

## 11.    Assignment

11.1    Subject to clause 11.2, neither Party may assign its rights hereunder except as may be expressly provided in writing and signed by the Parties.

11.2    IRW ownership and rights in the Trademarks are governed by the License Agreement and this Agreement.

## 12.    Survival

12.1    Clauses 7, 8, 12 and 16 of this Agreement shall survive the termination of the Agreement.

## 13.    Amendments

13.1    Any amendment or variation of this Agreement is valid only if it is in writing and signed by authorised representatives of each Party to this Agreement.

## 14.    Counterparts

14.1    This Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument.

## 15.    Third Party Rights

15.1    No one other than a party to this Agreement, their successors and permitted assignees shall have any right to enforce any of its terms.

## 16.    Notices

16.1    Any notice given under this Agreement shall be in writing in the English language or accompanied by a translation thereof into English certified (by an officer of the person making or delivering the same) as being a true and accurate translation thereof; and shall be delivered personally or sent by first class post (and air mail if overseas) or by fax or by e-mail to the Party due to receive the notice at its address, fax number or e-mail address and marked for the attention of the person or persons set out in clause 16.2 below or to another address or fax number or e-mail address or marked for the attention of another person or persons specified by the receiving Party. In all cases,

DocuSign Envelope ID: 4A33A8B8-9E44-4508-AF7E-E7382AE5C05F

the receiving Party shall promptly acknowledge receipt, which shall satisfy sender's obligations under this clause.

16.2    Notices under this Agreement shall be sent as follows:

16.2.1    if to IRW, to it at:

Address:    19 Rea Street South, Digbeth, Birmingham, England, B5 6LB

Tel:    +44 121 622 0603

Email:    trustees@irworldwide.org

Attention:    Chief Executive Officer

16.2.2    if to the IR USA, to it at:

Address:    3655 Wheeler Avenue, Alexandria, VA 22304

Tel:    703-370-7202

Email:

Attention:    Chief Executive Officer

16.3    Unless there is evidence that it was received earlier, a notice marked for the attention of the person specified in accordance with clause 16.2 is deemed given:

16.3.1    if delivered personally, when handed to an employee or agent of the receiving Party at the relevant address referred to in sub-clause 16.2;

16.3.2    if sent by post, except air mail, two Working Days after posting it;

16.3.3    if sent by air mail, six Working Days after posting it; and

16.3.4    if sent by e-mail, twenty-four hours after proof of transmission if no notice of non-delivery is received by the sender.

[SIGNATURE PAGE FOLLOWS]

**IN WITNESS WHEREOF** IRW has executed this Agreement this _____ day of _____, _____, as attested to by its duly authorised signing officers below, who represent that they have authority to bind the corporation.

**Islamic Relief Worldwide**

Per:                                                    ...................................

Name Lamia El Amri                                      ...................................

Position Director and Chair of Trustees                 ...................................

**Islamic Relief Worldwide**

Per:                                                    ...................................

Name Heshmat Khalifa Ahmed Khalifa                      ...................................

Position Director/Trustee                               ...................................

**IN WITNESS WHEREOF** IR USA has executed this Agreement this 14th day of December, 2019, as attested to by its duly authorised signing officers.

**IR USA**

Per:                                                    ...................................

Name Khaled Lamada                                      𝓀.⌣____

Position Chair, Board of Directors                      ...................................

**IR USA**

Per:                                                    ...................................

Name      Ihab Saad                                     Ihab Saad

Position   Director, Board of Directors                 ...................................

DocuSign Envelope ID: 4A33A8B8-9E44-4508-AF7E-E7382AE5C05F

**Schedule 1- the Objects**

**IRW Objects**

1.1 The Objects of the Charity are, as a practical manifestation and application of the humanitarian values inspired and guided by the Islamic faith, to promote for the public benefit:

1.1.1    the alleviation of human suffering for those who are the victims of war or natural disaster, trouble, inequalities, injustices or catastrophe and the prevention or relief of poverty or financial hardship by:

    a.  providing humanitarian assistance and other means of saving lives;

    b.  raising awareness and advocating for those in need;

    c.  advancing conflict resolution and reconciliation;

    d.  promoting religious and human harmony.

1.1.2 To promote sustainable development that meets the needs of the present without compromising the ability of future generations to meet their own needs for the benefit of the public by:-

    a.  the preservation, conservation and the protection of the environment and the prudent use of natural resources;

    b.  the relief of poverty and the improvement of the conditions of life in socially and economically disadvantaged communities;

    c.  the promotion of sustainable means of achieving economic growth and regeneration.

1.1.3    to advance and promote education by providing and assisting in the provision of facilities for education, in each case for the public benefit anywhere in the world;

1.1.4.    to advance health by the provision of financial or other assistance, including medicines, hospitals and other means, in each case for the public benefit anywhere in the world; and

1.1.5    the advancement of such other charitable purposes as may from time to time be determined and agreed by the trustees.

1.2    The Charity will advance the Objects regardless of race, gender or religious background.

1.3    Nothing in these Articles shall authorise an application of the property of the Charity for purposes which are not charitable in accordance with section 7 Charities and Trustee Investment (Scotland) Act 2005.

DocuSign Envelope ID: 4A33A8B8-9E44-4508-AF7E-E7382AE5C05F

**IR USA Objects**

The specific charitable, educational, and religious purposes of the Corporation shall be to alleviate human suffering, provide relief from poverty, facilitate education, promote sustainable socio-economic development, and elevate the standard of living for those in need, regardless of their race, gender, or religious background, all as a practical manifestation and application of the humanitarian values inspired by the Islamic faith, including for example, establishing development projects, schools, hospitals, and clinics, in areas where there is determined to be a need, and to provide relief in the event of man-made or natural disasters.

The Corporation is also organized to promote, encourage, and foster any other similar charitable, educational, and religious activities; to accept, hold, invest, reinvest, and administer any gifts, legacies, bequests, devises, funds, and property of any sort or nature, and to use, expend, or donate the income or principal thereof for, and to devote the same to, the foregoing purposes of the Corporation; and to do any and all lawful acts and things which may be necessary, useful, suitable, or proper for the furtherance or accomplishment of the purposes of the Corporation. All purposes and the activities flowing therefrom shall at all times conform to the requirements of Section 501(c) (3) of the Internal Revenue Code of 1986 (or a successor statute of similar import) (the "Code").

**Schedule 2- Summary of roles and responsibilities**

As provided by clause 4.2, the following is a summary of the composition and proceedings of the following bodies established and maintained by IRW. In the event of any inconsistency between the Rules and this summary, the Rules shall prevail. Capitalised terms in this Schedule shall, where the term is not defined in 1.1, have the meaning given to them in the Rules.

1.      International General Assembly

1.1     The International General Assembly is composed of the Members and Non-Voting Members of IRW. The Members are comprised of the following categories (as defined by the Rules):

      1.1.1 National Entity Members;

      1.1.2 Independent Members; and

      1.1.3 Trustee Members.

1.2     The Non-Voting Members are organisations admitted by IRW in accordance with the Non-Voting Membership Criteria.

DocuSign Envelope ID: 4A33A8B8-9E44-4508-AF7E-E7382AE5C05F

1.3     In addition to any powers and/or rights they may have under the Companies Acts, the Members of IRW have the following powers and/or rights under the provisions set out in the Articles and the Rules:

1.3.1 to approve changes to the Articles of IRW (including the Objects);

1.3.2 to approve changes to the Rules;

1.3.3 to approve changes to the membership criteria of the International General Assembly;

1.3.4 to make changes to the terms of reference for the International General Assembly;

1.3.5 to elect and remove members of the Board of Trustees;

1.3.6 to receive the annual report of IRW including the audited financial statements; and

1.3.7 to deliberate on matters to ensure the protection of IR, including its reputation and its assets.

2.     Board of Trustees

2.1     The Board of Trustees is responsible for managing IRW's business and complying with its duties under charity law and company law in England and Wales. The Board of Trustees has powers set out in the Articles, the Rules and the law of England and Wales. The Board's role includes:

2.1.1 proposing a global strategy for IR to the International General Assembly;

2.1.2 approving changes as it sees fit to the Licence and this Agreement;

2.1.3 approving policies for IRW;

2.1.4 ensuring IRW complies with the Articles, the Rules, each Members' Agreement and any law applicable to IRW;

2.1.5 ensuring management of risks and accountability of IRW and its entire staff;

2.1.6 appointing and removing the Chief Executive and oversee the recruitment of the Executive Team;

2.1.7 evaluating the performance of the Executive Team;

2.1.8 maintaining proper financial oversight; and

2.1.9 approving annual report and audited financial statements of IRW.

3.     Executive Team:-

3.1     The Executive Team, led by the IRW Chief Executive Officer is delegated authority by the IRW Board of Trustees to carry out the executive functions of IRW, under the supervision of the Board and the budget set by the Board.

3.2     The IRW CEO reports to the chair of the IRW Board or Trustees.

DocuSign Envelope ID: 4A33A8B8-9E44-4508-AF7E-E7382AE5C05F

4.      IR Family Council (IRFC):-

4.1      The IRFC is a consultative body mainly composed of the Chief Executive officers (or equivalent) of each National Entity Member. It is usually chaired in turns each year by the Chief Executive Officer of one of the National Entity Members.

4.2      The objectives of the IRFC  are:

        4.2.1 information sharing;

        4.2.2 shared planning and coordination;

        4.2.3 joint action;

        4.2.4 problem solving (e.g. challenges regarding compliance);

        4.2.5 capacity building for IR National Offices; and

        4.2.6 proposing new ideas or submitting requests to the IRW Board and International General Assembly.

4.3      The IRFC meets a minimum of once a year, and shall meet more frequently as and when needed.