# EXHIBIT E

DocuSign Envelope ID: 8D1B042F-B983-4B2A-AFA2-06D704A4E5CD

# GRANT AGREEMENT

## BETWEEN

## ISLAMIC RELIEF USA

## AND

## ISLAMIC RELIEF WORLDWIDE

**GRANT AGREEMENT SUMMARY**

| | |
|---|---|
| IRUSA Address: | 3655 Wheeler Avenue<br>Alexandria, VA 22304<br>USA |
| IRW Address: | 19 Rea St. South-Digbeth<br>Birmingham<br>United Kingdom B5 6LB |
| IRW PIN: | 410_000024 |
| Project Title: | Orphan Sponsorship Programme 5 Year Strategic Plan 2022-2026 |
| Grant Not To Exceed Amount: | $83,769,386.00 USD |
| Effective Date: | January 1, 2022 |
| End Date: | December 31, 2026 |
| Duration: | 60 months |

**RECITALS**

This GRANT AGREEMENT is between Islamic Relief USA (hereinafter "IRUSA"), an international non-profit non-governmental organization with headquarters located at 3655 Wheeler Avenue, Alexandria, VA 22304, USA, and Islamic Relief Worldwide (hereinafter "IRW"), an international non-profit non-governmental organization, a company limited by guarantee registered at the Registrar of Companies for England and Wales (registered no. 02365572) with registered office at 19 Rea Street South, Birmingham, West Midlands, England B5 6LB and a charity registered with the Charity Commission of England and Wales (registered no. 328158). IRUSA and IRW may be referred to separately as a "Party" and, together, as the "Parties."

WHEREAS, IRW has submitted a proposal to IRUSA for the project entitled *Orphan Sponsorship Programme 5 Year Strategic Plan 2022-2026*, for the primary purpose of improving the health, nutrition, education, mental and physical wellbeing of orphans and their families (hereinafter referred to as the "Project"); and

DocuSign Envelope ID: 8D1B042F-B983-4B2A-AFA2-06D704A4E5CD

WHEREAS, IRUSA desires to provide a grant to IRW for the Project, which grant shall be strictly administered in accordance with the terms set forth under this Grant Agreement (hereinafter "Agreement").

NOW THEREFORE, in consideration of the mutual promises herein made and undertaken, the Parties hereby covenant and agree as follows:

## I.    PURPOSE OF THE AGREEMENT

The purpose of this Agreement is to set forth the terms under which IRUSA will provide financial support to IRW in exchange for IRW's provision of services for the Project, a detailed description of which is found in **IRW's Proposal (Attachment A),** as submitted through IRUSA's Grant Management System, which is an integral part of this Agreement and incorporated herein by reference.

## II.    TERM OF THE AGREEMENT

The term of this Agreement shall be from January 1, 2022 to the date of final payment by IRUSA under this Agreement.  The total Project duration is 60 months.

## III.    AMOUNT OF AGREEMENT AND PAYMENT

A.  IRUSA shall pay IRW an amount not to exceed Eighty-Three Million Seven Hundred Sixty-Nine Thousand Three Hundred Eighty-Six U.S. Dollars ($83,769,386.00 USD) (hereinafter "Grant Amount") in accordance with the approved **Project Budget (Attachment B),** which is an integral part of this Agreement and incorporated herein by reference.  For the avoidance of doubt, the total payments made by IRUSA under this Agreement may be less than the Grant Amount and shall be contingent upon (i) the number of orphans to be funded by the Project and (ii) IRW observing its obligations under this Agreement.

B.  IRW shall submit an invoice of estimated Project costs at the start of each quarter, which IRUSA shall pay in full (subject to quarterly reconciliations and other conditions set forth below). At the end of each quarter, as dictated by the Reporting Schedule in Article VI (A), IRW shall submit a financial report according to the specifications listed in Article VI (B).

C.  The Grant Amount shall be divided into two different pools of funds: One pool of funds shall be used to sponsor orphan beneficiaries' basic needs (as further described in the Proposal and referred to in the Project Budget as "OSP") and the second pool of funds shall be used to help orphan beneficiaries' families cover other costs related to orphan beneficiaries' higher education, medical or sheltering needs that could create a financial burden on those families (such pool of funds referred to in the Project Budget as the "Complementary Fund"). The Complementary Fund is subject to an annual disbursement limit of $938,262 USD. IRUSA's payments to IRW of the Grant Amount shall include disbursements for both the OSP fund and Complementary Fund.

D.  IRUSA will pay IRW the Payment 1 amount within ten (10) business days of execution of the Grant Agreement and the balance of the Grant Amount according to the following payment schedule and subject to the conditions set forth in Article III (B) through Article III (K):

DocuSign Envelope ID: 8D1B042F-B983-4B2A-AFA2-06D704A4E5CD

| Description | Est. Payment Month | Estimated Grant Payment Amount (includes both OSP and Complementary Fund disbursements) |
|---|---|---|
| Payment 1 for Q1+Q2 2022 | December 2021 | $8,000,000.00 |
| Payment 2 for Q3 2022 | June 2022 | $3,334,080.00 |
| Payment 3 for Q4 2022 | August 2022 | $3,334,080.00 |
| Payment 4 for Q1+Q2 2023 | December 2022 | $8,000,000.00 |
| Payment 5 for Q3 2023 | June 2023 | $3,852,009.50 |
| Payment 6 for Q4 2023 | August 2023 | $3,852,009.50 |
| Payment 7 for Q1+Q2 2024 | December 2023 | $8,368,294.50 |
| Payment 8 for Q3 2024 | June 2024 | $4,184,147.25 |
| Payment 9 for Q4 2024 | August 2024 | $4,184,147.25 |
| Payment 10 for Q1+Q2 2025 | December 2024 | $8,929,724.00 |
| Payment 11 for Q3 2025 | June 2025 | $4,464,862.00 |
| Payment 12 for Q4 2025 | August 2025 | $4,464,862.00 |
| Payment 13 for Q1+Q2 2026 | December 2025 | $9,400,584.00 |
| Payment 14 for Q3 2026 | June 2026 | $4,700,292.00 |
| Payment 15 for Q4 2026 | August 2026 | $4,700,294.00 |

E.  All expenditures made with funds provided under this Agreement shall be for reasonable, allocable and allowable program expenditures incurred during the period of this Agreement. IRUSA shall have no obligation whatsoever to provide IRW with any funds or to make any reimbursement for any expenses in excess of the Grant Amount, nor shall IRW be required to continue performance or incur costs in excess of this amount without the prior written consent of IRUSA.

F.  Payments are to be made to IRW according to the anticipated expenditures for each reporting period, as detailed in the Project Budget.  Actual expenditures for each reporting period shall

DocuSign Envelope ID: 8D1B042F-B983-4B2A-AFA2-06D704A4E5CD

be verified with the timely submission of the Interim Financial and Monthly Program Reports submitted by IRW in accordance with the requirements set forth in below Article VI (Reporting).

G.  Notwithstanding anything contained herein to the contrary, IRW acknowledges and agrees that IRUSA shall be under no obligation to make any further payments in the event that IRW fails to expend at least seventy percent (70%) of funds received by IRW to date.  Once IRW reaches the seventy percent (70%) threshold, IRUSA shall resume making payments according to the payment schedule set forth under Article III (B) and subject to the other conditions set forth herein.

H.  IRUSA shall make further payments to IRW provided IRW submits the reports as detailed in Article VI (Reporting) herein.  IRUSA shall review and approve such mandatory interim and monthly reports within five (5) business days of receipt, unless special circumstances warrant a longer review period.  IRUSA shall make any applicable subsequent payments within five (5) business days after its approval of the corresponding Interim Financial Reports listed in Article VI (A).

I.  Further payments shall also be contingent upon IRW completing financial reconciliations for each quarter. Due to anticipated fluctuations in the number of orphans sponsored in each quarter, the amount of funds required to fund quarterly Project costs may be greater or less than amounts IRUSA pays to IRW for each quarter. IRW shall reconcile program finances at the end of each quarter and either credit IRUSA for amounts overpaid or debit IRUSA for amounts owed for each quarter, whichever is applicable. For the avoidance of doubt, IRUSA shall not make a payment for any quarter until it has received and reviewed a financial reconciliation for the immediately preceding quarter.

J.  Final payment will be made to IRW after the Final Financial and Program Reports are submitted by IRW to and accepted by IRUSA as sufficiently meeting the requirements set forth in Article VI (Reporting) and subject to Article IV (Unused Funds; Refunds).

K.  **Notwithstanding anything contained herein to the contrary, in accordance with Article XV(A)(1)(a), IRW acknowledges and agrees that IRUSA shall be under no obligation to make any payments if IRUSA is unable to raise sufficient funds specifically for the Project at any time during the term of this Agreement.**

L.  All payments will be made to IRW by wire transfer in USD to the following bank account:

Account Title:       Islamic Relief Worldwide

Account No:         82524711

Bank:                  Barclays Bank Plc

Branch:               Birmingham Colmore Row Area BCHS, Birmingham
Swift Code:         BARCGB2102J

## IV.    UNUSED FUNDS; REFUNDS

A.  Within ninety (90) calendar days of either the termination of this Agreement or the completion of the Project, whichever occurs first, IRW shall return to IRUSA the balance, if any, of any

DocuSign Envelope ID: 8D1B042F-B983-4B2A-AFA2-06D704A4E5CD

funds provided by IRUSA to IRW under this Agreement.

B.  If at any time during the life of this Agreement, or as a result of the final audit, it is determined by IRUSA that funds provided by IRUSA under this Agreement have been expended but not in accordance with the terms of this Agreement, IRW shall immediately refund such amount in full to IRUSA within five (5) business days.

## V.    MANDATORY NOTICES

A.  IRW is required to submit written notices to IRUSA of any of the following:

1)  Any revision to the results in the context of the agreed logical framework. Please note that the strategic objective cannot be changed;

2)  Any transfer of amounts budgeted for indirect costs to absorb increases in direct costs, or vice versa;

3)  Any transfer of funds among individual budget line headings exceeding 10% of the total budget;

4)  Any reallocation of funds between line items for the different countries;

5)  The sub-award, transfer or subcontracting of any work under this Agreement;

6)  Any change to key staff (i.e., Country Director, Finance Manager, or Project Manager) that could significantly impact Project implementation; or

7)  Any problems, delays or adverse conditions that will materially affect IRW's ability to fulfill program objectives, prevent the meeting of time schedules and goals, or preclude the completion of work by established time periods.   IRW's written notice shall be accompanied by a statement of action taken or contemplated and any IRUSA assistance needed to resolve the situation.

B.  IRW may not proceed with any of the transactions enumerated under Article V (A) above without prior written approval by IRUSA.  Requests for approval should describe the purpose of the change and should detail the impact that change will have on the program as originally proposed.  Requests must be submitted separately from other routine correspondence such as program updates and reports to:

> Awrad Saleh
> Senior International Programs Coordinator
> asaleh@irusa.org

IRUSA shall not unreasonably delay responding to any notice submitted by IRW under this section and shall use its best efforts to respond with any objections or proposed action plan within five (5) business days. IRUSA shall promptly notify IRW if any delay in IRUSA's official response is expected.

## VI.    REPORTING

### A.  Schedule of Mandatory Reports

DocuSign Envelope ID: 8D1B042F-B983-4B2A-AFA2-06D704A4E5CD

IRW shall submit the mandatory monthly Program Reports, Interim Financial Reports, and Yearly Narrative and Financial Reports according to the following schedule:

| PERIOD COVERED | DELIVERABLE | DEADLINE |
|---|---|---|
| January 1, 2022 - March 31, 2022 | International Development Interim Report – Financial | April 29, 2022 |
| April 1, 2022 - June 30, 2022 | International Development Interim Report – Financial | July 29, 2022 |
| July 1, 2022 - September 30, 2022 | International Development Interim Report – Financial | October 28, 2022 |
| January 1, 2022 - December 31, 2022 | International Development Interim Report - Narrative and Financial | January 31, 2023 |
| January 1, 2023 - March 31, 2023 | International Development Interim Report – Financial | April 28, 2023 |
| April 1, 2023 - June 30, 2023 | International Development Interim Report – Financial | July 31, 2023 |
| July 1, 2023 - September 30, 2023 | International Development Interim Report – Financial | October 29, 2023 |
| January 1, 2023 - December 31, 2023 | International Development Interim Report - Narrative and Financial | January 31, 2024 |
| January 1, 2024 - March 31, 2024 | International Development Interim Report – Financial | April 30, 2024 |
| April 1, 2024 - June 30, 2024 | International Development Interim Report – Financial | July 31, 2024 |
| July 1, 2024 - September 30, 2024 | International Development Interim Report – Financial | October 31, 2024 |
| January 1, 2024 - December 31, 2024 | International Development Interim Report - Narrative and Financial | January 31, 2025 |
| January 1, 2025 - March 31, 2025 | International Development Interim Report – Financial | April 30, 2025 |
| April 1, 2025 - June 30, 2025 | International Development Interim Report – Financial | July 31, 2025 |
| July 1, 2025 - September 30, 2025 | International Development Interim Report – Financial | October 31, 2025 |
| January 1, 2025 - December 31, 2025 | International Development Interim Report - Narrative and Financial | January 30, 2026 |
| January 1, 2026 - March 31, 2026 | International Development Interim Report – Financial | April 30, 2026 |
| April 1, 2026 - June 30, 2026 | International Development Interim Report – Financial | July 31, 2026 |
| July 1, 2026 - September 30, 2026 | International Development Interim Report – Financial | October 30, 2026 |
| January 1, 2022 - December 31, 2026 | International Development Final Report - Narrative and Financial | March 31, 2027 |

DocuSign Envelope ID: 8D1B042F-B983-4B2A-AFA2-06D704A4E5CD

### B. Interim Financial Reports

1) IRW shall submit to IRUSA Interim Financial Reports, by the deadlines specified in Article VI (A).
2) Interim and Final Financial Reports shall be comprised of three components: Quarterly 1-2-1 Orphan Sponsorship Invoice, Quarterly Orphan Gifts Invoice, and Quarterly Complementary Fund Invoices.
   a. Quarterly 1-2-1 Orphan Sponsorship report shall include the following information:
      i. Number of orphans sponsored in each country with a month to month breakdown;
      ii. Quarterly cost breakdown per country in USD;
      iii. Cumulative expenditure amount; and
      iv. A reconciliation of funds that did not go to a sponsored orphan due to sponsorship termination.
   b. Quarterly Orphan Gifts report shall include the following information:
      i. Amount of gifts that were donated per country with a month-to-month breakdown;
      ii. Quarterly cost breakdown per country in USD; and
      iii. Cumulative expenditure amount.
   c. Quarterly Complementary Fund reports shall include the following information:
      i. Number of orphan families assisted per country;
      ii. Breakdown of funds spent per country;
      iii. Cumulative expenditure amount per quarter; and
      iv. Amount remaining in the Complementary Fund based on the yearly limit.

3) IRW shall submit the Financial Reports by the specified deadlines through IRUSA's Grant Management System at:

   *https://irusagranteeportal.force.com/grants*

4) IRW agrees to keep separate, accurate, complete and up-to-date records with respect to any funds provided to it by IRUSA. IRUSA reserves the right to request any supporting documentation to substantiate the Project expenses for the period against the budgeted expenditure, and IRW shall use its best efforts to provide such supporting documentation upon IRUSA's request. IRW must be able to show that all disbursements are made in conformity with the Budget and the terms of this Agreement.

5) It is necessary that IRW maintains and reconciles records necessary to verify that payroll charged to this Agreement are based on approved timesheets or other documentation sufficient to confirm the time worked pursuant to this Agreement.

### C. Interim Program Reports

1) IRW shall submit to IRUSA interim Program Reports by the deadlines specified in Article VI (A) through IRUSA's Grant Management System at:

   *https://irusagranteeportal.force.com/grants*

DocuSign Envelope ID: 8D1B042F-B983-4B2A-AFA2-06D704A4E5CD

2)  Along with each interim Program Report, IRW must submit communication materials to facilitate IRUSA's communication or fundraising efforts.  To this effect, IRW shall submit photographs and/or video footage of Project activities, or any other materials that IRUSA may reasonably request from time to time.

### D.  Final Report

1)  Within ninety (90) calendar days after the termination of the Agreement or Project completion, whichever comes first, IRW shall submit a comprehensive Final Report through IRUSA's Grant Management System at:

*https://irusagranteeportal.force.com/grants*

2)  The Final Report shall include the Final Financial Report and Final Program Report, both of which shall cover the entire life of the Project.

3)  IRUSA reserves the right to withhold the final payment under the Agreement until such time as the full Final Report is received and approved by IRUSA, which approval shall be provided by IRUSA to IRW within ten (10) business days of IRUSA's receipt of the Final Report, unless there exist any special circumstances that result in a longer review period.  IRUSA shall not unreasonably delay final payment and agrees to provide IRW prompt notice, along with a full explanation, if any delay is expected.

## VII.  MONITORING AND EVALUATION

In addition to reviewing and approving the interim program reports described above, IRUSA reserves the right to conduct its own independent review at any point during the life of the Agreement.  Monitoring activities may include on-site visits to program activities, periodic implementation meetings and other measures necessary to monitor activities under this Agreement.  Furthermore, the IRUSA-funded programs may be evaluated periodically at selected sites with a minimum of thirty (30) days prior notification to IRW.  Any site visit report should be sent by IRUSA to IRW in draft form within ten (10) business days of completion to give IRW the opportunity to review and provide feedback prior to finalization of such report.

## VIII.  PERSONNEL

A.  IRW is directly responsible for all work and services that its personnel and any contractors perform.

B.  IRW's employees, contractors, agents or representatives shall not, under any circumstances, be construed as employees of IRUSA and shall have no claims or rights whatsoever against IRUSA.  In the event that a claim is brought, IRW will indemnify and hold IRUSA harmless from and against the full amount of any such claim, including legal fees and costs.

## IX.  SUB-AGREEMENTS

A.  IRW shall not enter into any sub-grants or sub-contracts, which will be funded under this Agreement, with any third party, unless it has obtained prior written approval from IRUSA.

B.  IRW's sub-grantees or sub-contractors shall have no relationship with IRUSA whatsoever.  All

DocuSign Envelope ID: 8D1B042F-B983-4B2A-AFA2-06D704A4E5CD

required IRUSA approvals must be directed through IRW to IRUSA.  IRW shall ensure that IRUSA is immediately notified of the need of any such approvals.

## X.    AUDIT, ACCOUNTING AND RECORDS

A.  IRUSA has the discretion to conduct an audit at any time upon reasonable notice to IRW during the Project, which includes but not limited to:

1)  Review of IRW financial records, including procurement records, bid analyses, timesheets, registration documents, and any other records pertaining to the Agreement;

2)  Review of Project activities and any related records; and

3)  Review of compliance with this Agreement.

B.  IRW's Annual Audit Report ("Audit Report"), signed by a certified audit firm, shall be submitted to IRUSA no later than thirty (30) days upon completion and shall include all comments, findings or adjustments that are specific to the Agreement.  IRW shall insure that, within ninety (90) days of the completion of the Audit Report, a comprehensive corrective action plan is implemented to address the auditor's recommendations, and determine whether audit findings necessitate adjustments to IRW's records.

C.  IRW shall maintain at its principal offices full and complete records and books of accounts covering financial details applicable to the activities funded under this Agreement.

D.  All records required to be kept under this article shall be maintained in a manner that will permit verification of the IRW's compliance with its representations, warranties and obligations under this Agreement.

E.  IRW shall facilitate any audit conducted by IRUSA.  IRW shall provide any assistance or cooperation requested by any authorized representative of IRUSA.  IRW's failure to assist or fully cooperate with any audit conducted by IRUSA hereunder shall be construed as a material breach of this Agreement.

F.  IRW shall preserve and make available such records for examination and audit by IRUSA or its authorized representatives:

1)  Until the expiration of ten (10) years from the date of submission of the final financial status report;

2)  For such longer period, if any, as is required to complete an audit to resolve all questions concerning expenditures, unless prior written approval has been obtained from IRUSA to dispose of such records.  IRUSA follows generally accepted accounting principles in determining that there has been proper accounting and use of funds.  IRW agrees to make available any further information requested by IRUSA with respect to any questions arising as a result of the audit; or

3)  If any litigation, claim, or audit is started before the expiration of the ten (10)-year period IRUSA shall serve notice on IRW of such event forthwith, the records shall be retained until such claims or audit involving the records have been resolved.

DocuSign Envelope ID: 8D1B042F-B983-4B2A-AFA2-06D704A4E5CD

G. In all other cases IRW shall follow the approved IRW Financial Guidelines Manual (Version 3). Any updates to this manual should be made available to IRUSA

## XI. PUBLICITY

A. The Parties shall agree on the form, content and timing of any public announcement regarding the activities governed by this Agreement.

B. Any Project or activity funded by IRUSA shall be accompanied by a sign or banner that credits IRUSA as a donor of such Project or activity except when both parties agree that such visibility may harm the Project, the safety of staff or the local community.

C. IRW shall not publish or permit to be published either alone, or in conjunction with any other person, any information pertaining specifically to IRUSA's business, without prior written approval from IRUSA. Such written consent shall apply to each specific application and relate only to that application.

## XII. COMPLIANCE WITH LAWS

A. IRW and IRUSA warrant that they shall, at their own respective expense and at all times, comply with all laws, rules, regulations, decrees or official government orders that may, now or in the future, become applicable to their respective business, equipment, and personnel, including without limitation, any registration and other administrative requirements. Neither IRW nor IRUSA shall engage in any activities that would violate any law, rule, regulation or official order.

B. IRW shall not make or give, either directly or indirectly, any improper payments of money or anything of value to a government official in connection with this Agreement. All payments by IRUSA to IRW will be received by IRW on its own account for the sole purpose of meeting its obligations under this Agreement. IRW shall not offer, give or promise any part of such payments, directly or indirectly, to any government official, political party or official thereof, to any candidate for political office or to any religious organization, with the intention of influencing that party's professional decision.

C. IRW must immediately notify IRUSA, in writing, upon discovery of any instance where IRW fails to comply with any requirement under this article. In the event of breach of such warranty, IRW shall release, defend and hold IRUSA harmless from and against any claims, including reasonable attorney's fees, arising out of or resulting from IRW's failure to comply with all applicable laws, rules and regulations, decrees or official government orders.

## XIII. ANTI-TERRORISM

A. Both IRW and IRUSA shall take reasonable precautions to ensure that none of the grant funds have been raised for or used to support or promote violence, terrorist activity or related training, whether directly through its own activities and programs, or indirectly through its support of or cooperation with any third parties.

B. IRW is specifically reminded that U.S. Executive Orders, statutes and regulations prohibit transactions with, and the provision of resources and support to, individuals and organizations associated with terrorism. It is the legal responsibility of IRW to ensure compliance with these U.S. Executive Orders and laws. This anti-terrorism provision must be included in any

DocuSign Envelope ID: 8D1B042F-B983-4B2A-AFA2-06D704A4E5CD

sub-contracts or sub-grants that IRW may enter into in fulfilling its obligations under this Agreement.  For further information, see http://sdnsearch.ofac.treas.gov.

C. **<u>Prior</u>** to disbursing any funds provided under this Agreement to any sub-grantees, vendors or implementing partners, IRW shall screen such sub-grantees, vendors or implementing partners and their senior management employees and board members (collectively "Third Parties") against relevant public lists of blocked entities and individuals connected with supporting or promoting violence, terrorist activity or related training. IRW shall conduct such screenings specifically in connection with this Agreement, irrespective of the date IRW previously screened the Third Parties and shall repeat such screenings on an annual basis during the term of this Agreement. Where screenings of any Third Parties result in any positive matches, IRW shall notify IRUSA of such fact immediately. IRW agrees to submit to IRUSA, within ten (10) business days of IRUSA's request, details of the screening conducted including a) the software used and the lists against which the screening has taken place; b) the process followed; c) total number of searches undertaken; and d) confirmation that any positive matches are not the recipients of IRUSA funding and IRW immediately terminated its relationship with such proscribed parties upon confirmation of the matches.

## XIV.    EXPLOITATION AND ABUSE

Both IRW and IRUSA shall conduct all activities under this Agreement in a manner consistent with international laws prohibiting corruption, sexual exploitation and other abuse of persons.

## XV.    TERMINATION

A. <u>Cancellation</u>

1) IRUSA may, by written notice to IRW, cancel all or part of this Agreement:

   a. if IRUSA does not raise sufficient funds specifically for the Project at any time during the term of this Agreement (in such event, IRUSA shall notify IRW 30 days in advance prior to effecting such cancellation);

   b. if performance of the Agreement puts IRUSA's 501(c)(3) tax-exempt status at risk or jeopardizes the tax-deductibility of IRUSA's donors' contributions;

   c. if IRW fails to deliver the services within the time specified by this Agreement, or any corresponding written extension;

   d. if IRW fails to perform any other provision of this Agreement or fails to make progress so as to endanger performance of this Agreement;

   e. in the event of IRW's gross negligence or malfeasance, including any incidence of fraud; or

   f. in the event of IRW's bankruptcy, suspension of business, insolvency, appointment of a receiver for IRW's property or business, or any assignment, reorganization or arrangement by IRW for the benefit of its creditors.

2) In no event shall IRUSA be held liable for any amounts expended by IRW after any termination notice has been given.

DocuSign Envelope ID: 8D1B042F-B983-4B2A-AFA2-06D704A4E5CD

3) Unless otherwise agreed by IRUSA, IRW shall return all unspent funds and unused equipment and/or supplies to IRUSA within ninety (90) days of any notice of termination.

4) IRW shall continue any work not expressly cancelled by IRUSA.

## XVI.   FORCE MAJEURE

A. IRW must notify IRUSA, in writing, of any event or occurrence, beyond the reasonable control of the IRW, that results in any delay to activities governed by this Agreement, or renders IRW's performance impossible.

B. IRW and IRUSA are released from any penalty in case of "Force Majeure." "Force Majeure" is any event, beyond the reasonable control of the affected Party, that could not be foreseen, avoided or eliminated, including but not limited to a fire, flood, or other natural disaster, changes in the law, adverse government actions, industrial disturbances, war, unrest, explosions and any other similar circumstances.

C. As a condition to the claim of non-liability, the Party experiencing the force majeure event shall immediately provide written notice to the other Party with full details of such force majeure event and its effects on the Party's ability to perform its obligations under this Agreement.  If such force majeure event results in the suspension of performance by one of the Parties for a period exceeding fifteen (15) days, then the Parties shall engage in good faith negotiations in order to implement a mutually acceptable solution.  If the force majeure event persists for a period exceeding six (6) months, then either Party may terminate this Agreement by sending prior written notice of such termination, effective upon delivery.

## XVII.   RELATIONSHIP OF THE PARTIES

The Parties hereto are legally independent and the employees of one shall not be deemed to be employees of the other.  Except as provided explicitly herein, no actions, obligations or commitments relating to the subject matter of this Agreement shall be binding upon the other Party.

## XVIII.   LEGAL LIABILITY; INDEMINIFICATION

A. The Parties are each solely responsible for their own acts or omissions, and those of their respective employees, contractors or any other personnel engaged by them in executing their respective obligations under this Agreement.  In any claim arising from this Grant Agreement, IRUSA shall not be liable in excess of the Grant Amount.

B. IRUSA does not assume any liability whatsoever for any claims of death, bodily injury, mental or emotional trauma, disability, loss or damage to property, or any other hazards, which the IRW's employees or representatives, or any third parties, may suffer as a result of their participation in activities performed under this Agreement.

C. IRW shall release, defend, and hold IRUSA, its officers, employees and representatives harmless against any and all claims, losses, costs and expenses, including reasonable attorneys' fees, that IRUSA may incur as a result of claims, in any form, by third parties arising from or related to:

1) IRW's intentional or negligent acts or omissions (including, without exclusion,

DocuSign Envelope ID: 8D1B042F-B983-4B2A-AFA2-06D704A4E5CD

noncompliance with applicable legal or regulatory requirements) or misrepresentations; or

2) IRW's material breach of any representation or covenant set forth herein.

D. In no event shall either Party be liable, in whole or in part, to the other for consequential, incidental, indirect, or special damages of any kind whatsoever, whether in an action that is the subject of a contract or in tort, including negligence, or otherwise, arising from the purposes for which this Agreement was entered into.

E. IRUSA warrants that the Project funds provided by IRUSA under this Agreement have been raised in conformity with all applicable laws and regulations.  IRUSA shall release, defend and hold IRW, its officers, employees and representatives harmless against any and all claims, losses, costs and expenses, including reasonable attorneys' fees, that IRW may incur as a result of any claims directly resulting from IRUSA's violation of such applicable laws and regulations.

## XIX.    DISPUTE RESOLUTION

In the case of any dispute, controversy or claim, the Parties will attempt to reach an agreement amicably by direct negotiations.  If no agreement can be reached within thirty (30) days, the respective Chief Executive Officers of IRUSA and IRW shall enter into discussions and attempt to resolve the dispute.  If the matter remains unresolved after sixty (60) days, then the issue shall be resolved through negotiations between the respective Board of Directors of IRUSA and IRW.  A mutually agreed decision by the Board of Directors of IRUSA and IRW shall be final.

## XX.    REPRESENTATIVES

The contact person for IRUSA is:

Awrad Saleh
Senior International Programs Coordinator
3655 Wheeler Avenue
Alexandria, VA  22304
asaleh@irusa.org

The contact person for IRW is:

Anwar Ahmed
anwar.ahmed@irworldwide.org
19 Rea St. South-Digbeth
Birmingham
United Kingdom B5 6LB

## XXI.    GENERAL PROVISIONS

A. This Agreement, including any attachments, may be amended only by prior written agreement between the Parties.

B. The Parties agree that each of the terms and provisions herein is separate, distinct, and severable from the remaining terms and provisions of this Agreement.  If any term or other provision of

DocuSign Envelope ID: 8D1B042F-B983-4B2A-AFA2-06D704A4E5CD

this Agreement is invalid, illegal or unenforceable, all other terms and provisions of this Agreement shall remain in full force and effect. If possible, any term or other provision determined to be invalid, illegal or unenforceable shall be automatically replaced with a legal and enforceable term or provision as similar to the original term or provision as possible.

C. Failure of either Party to enforce at any time any of the provisions of this Agreement, or to exercise any option that is provided herein, shall not be deemed to be a waiver of those provisions, nor to affect in any way the validity of any part of this Agreement, or the right of either Party thereafter to enforce each provision.

D. The foregoing represents the complete and exclusive statement of the agreement between the Parties, and cancels and supersedes any prior oral or written agreements, proposals, commitments, understandings, or communications with respect to the subject matter of this Agreement.

[SIGNATURE PAGE FOLLOWS]

DocuSign Envelope ID: 8D1B042F-B983-4B2A-AFA2-06D704A4E5CD

**IN WITNESS WHEREOF,** the Parties hereto have duly executed this Agreement as of the date of signing by their authorized representatives below:

---

Signed and agreed to on behalf of **ISLAMIC RELIEF USA**

Date: 12/30/2021

By Name: Sharif Aly
    Title: Chief Executive Officer

Signature: _Sharif Aly_
3396DF517C604B2...

---

Signed and agreed to on behalf of **ISLAMIC RELIEF WORLDWIDE**

Date: 30/12/2021

By Name: Waseem Ahmad
    Title: Chief Executive Officer

Signature: _____

---

**ATTACHMENTS:**

ATTACHMENT A – IRW's Proposal
ATTACHMENT B – Project Budget