# EXHIBIT E

<span style="color:red">**FOR THE ATTENTION OF: ARTHUR D. MIDDLEMISS**</span>
Lewis Baach Kaufmann Middlemiss PLLC

<u>SENT VIA E-MAIL ONLY</u>

2 October 2025

Dear Mr Middlemiss,

**RE: BREACH AND TERMINATION OF GRANT AGREEMENTS**

Further to our letters of 31 July 2025 and 2 October 2025 (today), we are now writing to address the other alleged breaches which you say related to *"multiple recent findings of procurement fraud and aid diversion in Afghanistan discovered by complaints made during the period from December 2023 to January 2024, including those described in Case Numbers 2024-01-00002, 00003, 00007, 0008, 0018, and 000032."*

Before going into the specifics of this matter, providing wider context is pertinent and relevant. It is recognised that corruption in Afghanistan is widespread and a growing problem. Your client was aware of the challenges of operating in the country and the risks of commissioning programme activity there. All international NGOs operating in Afghanistan will face similar challenges and issues.

Transparency International's 2024 Corruption Perceptions Index ranks Afghanistan at 162 out of 180 countries. The Norwegian Refugee Council make availably publicly on their website the extent to which they are impacted, see here:

https://www.nrc.no/who-we-are/anti-corruption-work-in-nrc-2022

https://www.nrc.no/who-we-are/anti-corruption-work-in-nrc-2021

In connection with Afghanistan, they identified selection of ineligible beneficiaries and suppliers, issues with procurement, collusion with suppliers, procurement fraud and embezzlement.

International NGO's that claim not to be facing issues whilst operating in Afghanistan are likely to be those of greater concern in that they are either unaware of aid diversion or willingly and/or unwillingly choose to ignore such realities.

The occurrence of such wrongdoings does not justify your client's allegations of recklessness and negligence leading to 'serious breach' assertions and termination.

As a highly respected international NGO, we have a zero-tolerance approach to such wrongdoings and have robust processes to deal with such matters.

1



In the case of the specific instances to which you refer, we confirm that:

1. We have policies and procedures in place.
2. We ensure staff are trained.
3. We have systems in place to identify wrongdoing. It is these very systems which allowed us to identify the problems to which you refer.
4. We are open and transparent and share details of the challenges we face with our affiliates.
5. We inform affected donors if their funds are involved in any wrongdoing that we identify.
6. We investigate the allegations and address each issue.

Cases 2024-01-00002, 00003, 00007, 0008, 0018, and 000032 do not relate to the two projects which you have referenced, specifically:

• IRW PIN HQ0202292101, with Project Title Emergency Assistance and Early Recovery Support to earthquake-affected communities in Herat Province, Afghanistan (the "Earthquake Recovery Grant Agreement"), and

• IRW PIN 020_004587, with Project Title Health Education and Livelihood Program, (the "Healthcare Grant Agreement")

In fact, cases 2024-01-00002, 00003, 00007, 0008, 0018, and 000032 do not relate to any of your client's funds and therefore have no impact on your client's funds.

The issues identified in those cases relate to UN funded projects. As is our usual practise, upon identifying the issues, we immediately commenced an investigation and UNDP Afghanistan were informed of the matter. Despite their funds being impacted, UNDP did not terminate the contract. The UNDP Internal Audit office reviewed our own investigation findings and undertook their own review of findings/investigation which resulted in remedial actions (not termination) which included:

1. Shortening the no cost extension period we requested.
2. Liquidated the project as per extended contract time period and paid all balances due.
3. Included a disallowance of the misappropriated funds which our own investigation identified. However, UNDP agreed with us that we would redistribute these funds to the correct beneficiaries after recovering funds from service providers who were partially responsible for the misappropriation. This was done ensuring that the beneficiaries did not suffer.

2

We therefore do not accept that your claim that we have been reckless or negligent nor that the contract can be terminated on these grounds.

Yours sincerely

Signed by:

*Hussein Osman*

844C34F393B94F2...

Hussein Osman

General Counsel

E-mail: hussein.osman@irworldwide.org