# EXHIBIT J

December 7, 2025

**VIA EMAIL AND COURIER**

Board of Trustees
Islamic Relief Worldwide
19 Rea St. South
Birmingham, B5 6LB
United Kingdom

**Re: Formal Request for Invocation of Dispute Mechanism**

Dear IRW Board of Trustees:

I write this letter with great sadness. In October, IRUSA invoked its contractual right to suspend the Members' Agreement between Islamic Relief USA ("IRUSA") and Islamic Relief Worldwide ("IRW") ("the Agreement") pursuant to Section 6.5, on the specified ground that continued participation "presents an immediate threat to the reputation, integrity or operation" of IRUSA. We explained in detail why this step was necessary for IRUSA to be able to continue to carry out its mission on behalf of its donors to provide for beneficiaries in need. In sum, IRUSA was notified by the Chairman of the United States House of Representatives Ways and Means Committee that it was seeking from the Internal Revenue Service the "investigation and ultimately revocation of its tax-exempt status." The letter from the Chairman of the Committee referenced and attached an Appendix, which particularized certain alleged actions, statements and connections of IRW and its leadership relating to terror finance, associations with alleged terrorist organizations, and/or antisemitic actions or statements. It made no statements regarding any alleged wrongdoing by IRUSA other than transmission of funding to IRW under funding protocols.

We have been endeavoring since receiving that letter to secure a meeting with the staff of the House Ways & Means Committee to discuss the letter, which reiterated the same request and allegations sent by the Committee in 2024 and to which we responded to understand the agenda and intentions of the Chairman of the Committee. Of course, since the sending of the original letter sent by the Chairman to the Biden-appointed Internal Revenue Service Commissioner, the administration has changed, and the new administration has announced its priority of investigating charitable entities and removing their tax exemptions if they believe these entities are undertaking activities in conflict with US government policies. Thus, the new letter significantly heightens the risk to IRUSA. On November 13, our Chief Executive Officer, Chief Operations Officer, Chief External Affairs Officer, our external General Counsel and our external Lobbyist had a meeting with three senior staff members who are leading the investigation and initiated the above-referenced letter, and are liaising with senior political officials at the Internal Revenue Service.

They made clear that they had no issues with the policies, procedures and operations of IRUSA. However, they indicated great concern with IRW and in particular with the allegations as articulated in the letter. They had reviewed IRW reports and filings and noted that IRUSA was

the single largest funder of IRW. In their view, this was unacceptable, and they emphasized that the course of the investigation will depend on IRUSA taking all necessary steps to separate its operations and that they will be monitoring such steps, including funding and other working relationships. The facts underlying the allegations in the Appendix here are irrelevant; trying to contradict the United States Congress in this environment would be foolish and futile. In any event, there would be nothing left of IRUSA at the end of such a process. The meeting on November 13 made clear that IRUSA will be able to continue its operations and continuing work (indeed, they praised the work in Syria and its importance) as a fully independent and autonomous entity, but continued connections to IRW directly threaten its tax exemption and continued existence.

To state the obvious, if IRUSA loses its tax exemption, this would be the end of IRUSA and the work that we have carried out and expanded over many years around the world. We asked in our letter of October 10 to work with you to carry out the mechanics of the Suspension and to communicate in good faith so that there would be no interruption to programming or sacrifice of our beneficiaries' urgent needs based upon events which have made the previous arrangements an existential threat to IRUSA (and we would suggest, given IRUSA's role in funding projects around the world, to the IRW network as well). We had presumed that you would understand the situation, review the letter and agree that the overarching objective of both our organizations was to continue to provide relief as effectively as possible and that we could have a constructive, good faith dialogue as our letter suggested. The November 13 meeting confirmed the importance of the suspension to IRUSA's status in the United States and the necessity of engaging in the process yesterday.

We were, therefore, shocked and saddened to learn recently that IRW has given instructions to your offices and affiliates not to cooperate in any way with IRUSA. This hurts no one other than the poor and desperate people we serve. We have been notified by our Brothers and Sisters in South Africa that, as a result of our notice of suspension, all members of the Federation have been instructed to freeze any direct engagement or collaboration with IRUSA until the current legal and membership matters are formally resolved. As a result, "Islamic Relief South Africa will not proceed with discussions, planning, or implementation related to Ramadan, Qurbani, or any other programme activities in partnership with IRUSA." We understand that similar instructions have been provided throughout the network. We also understand you have informed others within the network that you intend to resort to legal options. Rather than engage in good faith discussions as we have requested and as are contemplated, and, in the interim, permit the funds that IRUSA has raised to continue to flow to fulfill humanitarian purposes, you have decided to shut things down. Your instruction that there is not to be engagement until all matters are resolved—coupled with your refusal to engage in dialogue—means that we cannot carry out our work not just for a brief period, which is bad enough, but likely for a period of many months or even years. We view this as a counterproductive act that only hurts our beneficiaries and frustrates our humanitarian purposes.

Our invocation of Section 6.5 was proper and necessary and is in the Agreement for a situation precisely like this one. We wanted a dialogue to be able to function constructively while under the Section 6.5 Suspension. What you have done has created unnecessary chaos under the mistaken premise that Section 6.5 somehow requires it. It does not.

You have rejected our request for dialogue – in this and other matters – and our community will have to bear the cost and consequences.  Accordingly, we hereby invoke the provisions of the Agreement for dispute resolution as provided therein.  In that regard, we not only wish to invoke those provisions with respect to your wrongful directions to cease cooperation, but we also further invoke the provisions with respect to further breaches concerning which we have corresponded in recent months, including without limitation:

1. Your refusal to permit IRW branch offices to cooperate in the audit process for the orphans' project and the Afghanistan project.  We have a right and obligation to make sure that our funds are being spent properly and there is a designated process for that which you have frustrated without a right to do so.

2. We have requested on multiple occasions the return of project funds in the amount expended in the export Iranian-origin goods from Iran as well as the balance of any project funds provided to IRW by IRUSA under the Earthquake Recovery Grant Agreement (IRW PIN HQ0202292101), and the Healthcare Grant Agreement (IRW PIN 020_004587),  which were terminated on July 10, 2025. We demand that they be returned immediately.

3. We have requested on multiple occasions return of amounts remaining after completion of projects, amounting to at least $3.6 million.  That is IRUSA's money, which it needs for other projects and your retention of these funds is without justification and in breach of contract and law.  We demand that they be returned immediately.

4. IRUSA has the sole right to appoint its Trustees subject to the Membership Accreditation Committee (MAC)'s right to review and advise with respect to such appointments.  The MAC reviewed our proposed appointment and advised on that appointment.  That completes its role.  Yet the MAC insisted that IRUSA thereafter participate in an ad hoc Mediation Group consisting of IRW officials effectively to serve as a mediator where it is a party and where the language of Article 8 of the Agreement could not be more unambiguous.  This ad hoc committee is in breach of Article 8 of the Membership Agreement, and we refer it as well to the dispute process.  We previously referred this issue to the dispute resolution process, and IRW has failed to engage within the thirty-day period.  Thus, in compounding the breach, you have ignored a dispute resolution process the terms of which are clear.

The dispute resolution process was put in place in order to allow for dialogue at various levels and to promote resolution of issues without having to resort to an adversarial process, which is expensive, time consuming and unlikely to promote consensus solutions.  Section 6.5 does not and should not impede a process designed to yield win-win outcomes.  We are at a point where your unwillingness to address the issues referenced above are pointing us toward a lose-lose-lose solution, where the biggest losers are those who rely on us the most.

We hope that you will reconsider our requests for dialogue at the various levels as specified in the dispute resolution process.  If you are unwilling to do so, we shall have to consider other measures to resolve this dangerous stalemate.  In the interim, we reserve all rights in this matter.

Very truly yours,

Signed by:

*Abdullah Mitchell*

50F1ADA5700E4F1...

Abdullah Mitchell
IRUSA Board Secretary

Cc:    Board of Directors, IRUSA