# EXHIBIT K



Haroun Atallah
Islamic Relief Worldwide
19 Rea St. South
Birmingham, B5 6LB
United Kingdom
*Via Email Only*

December 24, 2025

### RE: Letter of Intent to Terminate Contractual Relationship & Engage in Good-Faith Negotiations

Dear Br. Haroun:

On behalf of Islamic Relief USA (IRUSA), I am writing to present this Letter of Intent that serves to outline the basic terms and principles under which IRUSA and Islamic Relief Worldwide (IRW) will commence negotiations and enter into a mutually acceptable termination agreement.

As you are aware, humanitarian and charitable organizations continue to operate in an increasingly complex and volatile geopolitical and regulatory environment. In recent years, these challenges have further intensified in jurisdictions such as the United States. More specifically, IRW has been the subject of severe and escalating scrutiny by authorities in the United States. This has resulted in and created ongoing and material operational, reputational, and legal risks to IRUSA.  Although IRUSA, a 501(c)(3) non-profit organization headquartered in the United States, and IRW, a United Kingdom based charity certified against the Core Humanitarian Standards (CHS), are legally separate and independent entities, it is nevertheless necessary to sever any existing contractual obligations or relationship to maintain continuity of independent operations and protect the interests of beneficiaries. This measure is undertaken not for commercial reasons or out of any personal animus; rather it is absolutely necessary for IRUSA to continue to exist and operate as an American 501(c)(3) entity.  We would respectfully submit that absent the prompt termination contemplated herein, any formal linkage between our two organizations would cause further risk to IRW as well.

The following terms and principles will therefore serve as the foundation for negotiations between IRUSA and IRW with the intent to fully terminate any and all contractual obligations on an expedited basis.

1.     **Principles for Agreement, Coordination, and Operational Boundaries**

   1.1.    **Commitment to Non-Litigation and Internal Resolution**

   IRW and IRUSA commit to refrain from litigation or court action against one another, except as may be required by applicable law or regulation.

 



All disputes, misunderstandings, challenges, or potential claims shall be resolved promptly through constructive good faith dialogue, joint assessment, and consensus-driven solutions consistent with the overarching situation as set forth above.

Nothing in this section shall affect the right or ability of either party to invoke the dispute resolution procedures outlined in the Membership Agreement or the right of IRUSA to maintain its complete autonomy and independence as provided in that Agreement.

## 1.2.    Mutual Recognition of the Parties' Realities and Challenges

IRW acknowledges the exceptional pressures facing IRUSA in the current U.S. regulatory context and the requirement for arrangements that safeguard IRUSA's continued regulatory status, operational viability, reputation, and staff.

IRUSA likewise recognizes IRW's role in operating where it is permitted to operate, maintaining program effectiveness where it operates and in the overall governance of those entities (excluding IRUSA) with which it continues to have legal or operational relationships.

However, IRUSA and IRW each understand that the functions referenced above with respect to IRUSA's operating outside the United States are not roles which can convey any enforceable rights to IRW over IRUSA in its operations in the United States or elsewhere.

## 2.    Proposed Framework for Termination of Contractual Obligations

The Parties agree that the Membership Agreement, and any other agreements or relationships, whether formal or informal, between IRW and IRUSA shall no longer be of any force and effect (other than with respect to the Dispute Resolution clause of the Membership Agreement which shall continue in effect post-termination) and that IRUSA shall no longer be part of any governance structure or in any legal, operational, financial or other relationship with IRW. The two entities shall be completely separate, as a matter of law and fact, with no ongoing relationships, contractual or otherwise.

### 2.1.    Financial Compensation Mechanism

2.1.1.    IRW shall sell, assign, and transfer to IRUSA all rights, title, licenses, and interests in and to the registered intellectual property, including but not limited to the "Islamic Relief USA" and "IRUSA" name and logo, collectively referred to as the "Intellectual Property."

2.1.2.    In consideration for the transfer of the full and perpetual rights to the Intellectual Property, IRUSA shall pay IRW an agreed-upon amount of financial compensation in accordance with agreed upon terms to the extent permitted by law.

 



2.1.3.    IRUSA shall owe no other amounts to IRW under the Membership Agreement or otherwise.

2.1.4.    IRW warrants that it is the sole owner of the Intellectual Property and has the full right and authority to transfer the rights therein.

2.1.5.    IRW shall have no right to appoint or otherwise license or transfer the intellectual property of IRUSA to any other entity and IRW may not claim that IRUSA has abandoned the intellectual property and therefore give rise to a right to convey it to any other entity or person.

2.1.6.    IRW shall not seek to interfere or otherwise obstruct any relationship between IRUSA and any of its donors, employees or beneficiaries at any time.

**2.2.    Direct Engagement with Field Offices**

2.2.1.    IRUSA shall have the right but not the obligation to continue to:

   2.2.1.1.    Engage directly with field offices.

   2.2.1.2.    Execute agreements directly and independently with any field office or entity.

   2.2.1.3.    Transfer funds directly to any field offices or entity.

   2.2.1.4.    Conduct independent monitoring, verification, auditing, and reporting of field offices or entities.

2.2.2.    In the event that IRW determines it can no longer maintain a field office, IRUSA shall have the right of first refusal but not the obligation to assume operations of that field office after it conducts necessary viability and due diligence assessments. Any field office that is assumed by IRUSA shall have no further obligation to IRW, contractual or otherwise.

**2.3.    Continuity of Orphan Sponsorships**

2.3.1.    To protect vulnerable children, all orphan sponsorship lists currently managed through IRW shall be transferred to a local partner designated by IRUSA as soon as possible, ensuring uninterrupted care regardless of organizational adjustments.

**2.4.    Full Cooperation on Historical Funds Documentation**

2.4.1.    IRW shall provide IRUSA with any reports, audits, or other documents required for United States government inquiries or compliance reviews related to historical projects previously implemented by IRW on behalf of IRUSA.

 



## 2.5. High-Level Strategic Meeting

2.5.1. The Parties commit to holding a high-level meeting at a mutually agreed upon location no later than January 8, 2026 with the purpose of converting this Letter of Intent into a binding and comprehensive termination agreement.

2.5.2. The participants shall include:

**IRUSA**
- All Board Members or a formally appointed and authorized delegation of Board representatives
- IRUSA CEO

**IRW**
- All Board Members, or a formally appointed and authorized delegation of Board representatives
- IRW CEO/Interim CEO

**Both Parties**
- Appointed and authorized counsel and/or representatives, who will observe and advise, but not substantively participate in any such meetings unless agreed upon by the parties.
- Appointed and authorized mediators to be present and facilitate the objectives of the meeting and execution of the termination agreement.

This Letter of Intent is non-binding and does not constitute a final termination agreement. Further, nothing contained in this Letter of Intent constitutes, may be construed as, or is intended to be an admission or acknowledgement of any allegation against either party. **Please respond with your agreement to meet to discuss this matter and location suggestions no later than December 30, 2025.** Thank you for your time and attention.

Sincerely,

Signed by:

*Abdullah Mitchell*

50F1ADA5700E4F1...

Abdullah Mitchell
Secretary
Board of Directors

cc:   Board of Directors, IRUSA
      Board of Directors, IRW

